## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------x

  )

**EDDIE VLADIMIROVICH ASTANIN,**   )
    12, Lesnaya St., Flat 64   )
    Korolev, Russia   )

  )

  )

                  *Plaintiff,*   )

          v.   )    Case No. 24-cv-697

  )

**JANET YELLEN**   )
    **In her official capacity as**   )    **COMPLAINT FOR**
    **Secretary of the United States**   )    **DECLARATORY AND**
    **Department of the Treasury**   )    **INJUNCTIVE RELIEF**
    1500 Pennsylvania Avenue, NW   )
    Washington, D.C. 20220   )

  )

    and   )

  )

**THE UNITED STATES DEPARTMENT OF**   )
**THE TREASURY**   )
    1500 Pennsylvania Avenue, NW   )
    Washington, D.C. 20220   )

  )

    and   )

  )

**BRADLEY T. SMITH**   )
    **In his official capacity as**   )
    **Director of the United States**   )
    **Department of the Treasury**   )
    **Office of Foreign Assets Control**   )
    1500 Pennsylvania Avenue, NW   )
    Freedman's Bank Building   )
    Washington, D.C. 20220   )

  )

    and   )

  )

**THE UNITED STATES DEPARTMENT**   )
**OF THE TREASURY, OFFICE OF**   )
**FOREIGN ASSETS CONTROL**   )
    1500 Pennsylvania Avenue, NW   )
    Freedman's Bank Building   )
    Washington, D.C. 20220   )

  )

                *Defendants.*   )

  )

-----------------------------------------------------------x  )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Eddie Vladimirovich Astanin (herein referred to as "Mr. Astanin") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Bradley T. Smith (collectively, the "Defendants") and in support of his complaint alleges:

**INTRODUCTION**

1.      This lawsuit arises from the Defendants' continued and unlawful failure to adjudicate Mr. Astanin's petition to rescind his designation as a Specially Designated National ("SDN") under Executive Order ("E.O.") 14024 and remove his name from the Specially Designated Nationals and Blocked Persons List (the "SDN List").

2.      In support of his complaint, Mr. Astanin asserts two claims—both violations of the Administrative Procedures Act.  First, Mr. Astanin's designation and continued inclusion on the SDN List is arbitrary and capricious because it has no logical connection to the stated purpose of the sanctions.  Second, the Defendants' failure to issue a decision on Mr. Astanin's petition for over a year is an unreasonable delay and is arbitrary and capricious agency action, as Mr. Astanin is being treated differently than similarly situated applicants, whose petitions have been adjudicated in a timely fashion.

3.      Mr. Astanin has had a long career working with financial services organizations in Russia and abroad.  His work over the last 20 years has been widely regarded as being a positive influence for modernization in the Russian financial markets.  He has been credited with participating in the development of a Russian financial infrastructure that was integrated with global markets and amenable to Western companies and investment, including the creation of Russia's first central securities depository, the National Settlement Depository (the "NSD"), based

on eligible securities depositories standards in line with Rule 17f-7 issued by the U.S. Securities and Exchange Commission.

4.      Beginning in November 1994, Mr. Astanin started work at CJSC Moscow Interbank Currency Exchange ("MICEX") (MICEX is now the Moscow Exchange ("MOEX")) as a specialist in the government securities market and left MICEX as a director of the Government Securities and Money Market Instruments Department.

5.      In 2005, Mr. Astanin started work for CJSC National Depository Center ("NDC"), a subsidiary of MICEX, as the Deputy General Director. In November 2009, Mr. Astanin was appointed by the NDC Board of Directors as the General Director of NDC.

6.      After the merger of NDC with MICEX Clearing House, NSD was created. Mr. Astanin was chosen as the Chairman of the Executive Board of NSD and appointed as a member of the Supervisory Board of NSD, which is part of the Moscow Exchange Group.  At NSD, Mr. Astanin led a number of key innovation projects, such as corporate actions reform launched in 2014, e-proxy voting introduced in the same year, and creation of the Corporate Information Center in 2016.  Mr. Astanin also made considerable contributions to the widespread implementation of the ISO 20022 formats for financial information by Russian and international financial institutions.

7.      In 2012, NSD received the status of the Central Securities Depository ("CSD"). Since NSD (as CSD) was an active user of SWIFT, in 2015 the Russian National SWIFT Association ("ROSSWIFT") nominated Mr. Astanin to the SWIFT Board of Directors.  After expiration of his three-year term, Mr. Astanin was reelected for a new term until 2021.  In 2021, Mr. Astanin was nominated by national groups of SWIFT users from 13 European countries and reelected to the SWIFT Board of Directors for a new term.

8.      In June 2020, Mr. Astanin left NSD and took the position of Chairman of the Management Board of CCP NCC.  In the period from June 2020 to November 2021, he was able to complete a restructuring of the business processes at CCP NCC to bring them in line with international financial standards.

9.      At the meeting of the Supervisory Board of CCP NCC on November 26, 2021, Mr. Astanin announced his intention to leave CCP NCC early (his contract was until June 2023). The Supervisory Board of CCP NCC had allocated a period until the end of March 2022 to search for a new candidate for this position.  As soon as a new candidate was found, Mr. Astanin left CCP NCC on April 8, 2022.

10.     In June 2022, Mr. Astanin also resigned from the SWIFT Board of Directors. His resignation was registered by the Netherlands Chamber of Commerce on June 9, 2022.

11.     Mr. Astanin was reelected as a member of NSD's Supervisory Board at the Annual General Meeting of NSD's shareholders on April 27, 2022.  On June 3, 2022, Mr. Astanin informed the chairman of the Supervisory Board on his decision to voluntarily resign from NSD's Supervisory Board.  Because NSD's Articles of Association required reelection of the Supervisory Board by convening a new General Meeting of company shareholders, Mr. Astanin was not formally dismissed from NSD's Supervisory Board until by resolution of the General Meeting of NSD shareholders on July 22, 2022.  Since June 3, 2022, Mr. Astanin has stopped actively participating in the financial services sector of the Russian Federation economy.  And since July 22, 2022, after completion of the formal procedure of reelection of NSD's Supervisory Board, Mr. Astanin has had no connections with the Moscow Exchange Group.  Mr. Astanin is now focused on his private portfolio investments, predominantly in U.S. and EU securities markets. Mr. Astanin does not invest in any Russian companies.

12.    On September 15, 2022, OFAC designated Mr. Astanin on the SDN List under the February 22, 2022 *Determination Pursuant to Section l(a)(i) of Executive Order 14024* (the "Financial Services Determination") for "operating or having operated in the financial services sector of the Russian Federation economy."  The Treasury Department press release announcing the designation stated that:

> Eddie Vladimirovich Astanin (Astanin) is the Chairman of the Management Board and Chairman of the Executive Board of Joint Stock Company Non-Bank Credit Organization Central Counterparty National Clearing Center (CCP NCC), the Moscow-based stock exchange's clearing service provider. Until 2020, Astanin also held the position of Chairman of the Executive Board and member of the Supervisory Board of the NSD.

13.    The consequences of the designation are significant. His bank accounts, including pension savings, have been frozen and he cannot engage in routine transactions, including those in support of his family.  Moreover, Mr. Astanin and his spouse have had to postpone their planned relocation to Italy and are forced to remain in Russia.

14.    Shortly after being sanctioned, Mr. Astanin sought to be delisted through the authorized administrative process.  A formal petition for removal from the SDN List was submitted to OFAC on behalf of Mr. Astanin on December 30, 2022 ("Mr. Astanin's Petition for Removal" or the "Petition").

15.    Yet, for well over a year, Mr. Astanin's Petition for Removal has been pending with the Treasury Department.  The Petition has not been acted upon and the Defendants have provided no indication as to when a decision might be rendered.  In the meantime, OFAC has delisted numerous similarly situated individuals whose circumstances are materially indistinguishable from Mr. Astanin's.

16.     A review of the facts shows the lack of justification for Mr. Astanin's designation. At the outset, the Treasury Department press release announcing Mr. Astanin's designation included incorrect information about Mr. Astanin's employment history.  Despite the press release stating that Mr. Astanin was the Chairman of the Executive Board of CCP NCC, Mr. Astanin has never been appointed to the position of Chairman of the Executive Board of CCP NCC.  In fact, Mr. Astanin had no position at all in the Russian financial services sector at the time of his designation.  Beginning in November 2021, Mr. Astanin acted to remove himself from leadership and management positions at NSD and CCP NCC and severed ties with other financial services organizations, such as SWIFT.  Now, given that Mr. Astanin is no longer in any leadership or management roles in Russian financial services organizations, he has no ability to impact the decisions of these organizations that are of concern to the U.S. Government.  As a result, the current sanctions designation does nothing to affect these organizations, but only has the effect of unfairly penalizing Mr. Astanin and his family.

17.     While Mr. Astanin did have past involvement in organizations in the financial services sector in Russia, much of that involvement predated E.O. 14024 and the Financial Services Determination.  In fact, his earlier involvement with financial service organizations was recognized as being positive and in support of Western financial interests.  Based on his merits, reputation, and professional skills, SWIFT continued to nominate Mr. Astanin to the SWIFT Board—a prestigious honor—even after Russian National SWIFT Association ("ROSSWIFT") ceased nominating SWIFT Board members.  For example, the UK magazine Banking Technology, which covers FinTech issues in the banking and financial sectors, nominated Mr. Astanin for the 2016 Banking Technology Awards in the category of Tech Leadership, which is given to the financial leaders who made the biggest contributions to technology development in the industry.

18.     In response to Mr. Astanin's December 30, 2022 Petition for Removal, the Treasury Department sent Mr. Astanin one questionnaire, dated June 21, 2023, which Mr. Astanin answered with detailed responses on August 28, 2023.   OFAC did not follow-up with regard to any of Mr. Astanin's responses.  Apart from this one-time request for information, OFAC has not actively engaged with Mr. Astanin in any way.

19.     In response to an email on September 26, 2023, asking for an update on the status of the case, the Treasury Department stated that it is "working diligently" to reach a decision. However, as of the date of this Complaint, Mr. Astanin has not received any meaningful updates— much less a decision— from OFAC on his Petition.

20.     Thus, nearly 18 months after he was designated for sanctions and more than a year after filing his Petition for Removal, Mr. Astanin's case has not been resolved.  Mr. Astanin continues to suffer greatly from the sanctions.  His bank accounts have been frozen and he cannot engage in routine transactions, including those in support of his family.  This will continue as long as Defendants fail to adjudicate his Petition.

21.     Since Mr. Astanin filed his Petition, several other similarly situated individuals have had the sanctions against them rescinded.  Like Mr. Astanin, all of these individuals were sanctioned because of positions they held at Russian financial institutions and, like Mr. Astanin, all resigned from these positions.  These include Joel Lautier, Anatoly Karachinsky, Andrey Golikov, Elena Titova, Paul Goldfinch, Natalya Alymova, and Aleksey Fisun.  All but one of these individuals were on the SDN List for less time than Mr. Astanin has been.  Mr. Astanin should be lawfully afforded at least the same consideration as these other similarly situated parties.  Despite this, Mr. Astanin inexplicably remains on the SDN List.

## JURISDICTION AND VENUE

22.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

23.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

24.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

25.     The Plaintiff in this case is Mr. Eddie Vladimirovich Astanin.  Mr. Astanin is and was at all relevant times a citizen of the Russian Federation.  On January 5, 2023, he was granted a permanent resident permit in Italy.

26.     Defendant, the U.S. Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury.  The Treasury Department is responsible for overseeing various offices, including OFAC.  It is located at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220.

27.     Defendant Janet Yellen is the Secretary of the Treasury of the United States.  Secretary Yellen is sued in her official capacity.

28.     Defendant OFAC is a federal administrative agency of the Treasury Department.  OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024.  Further, under 31 C.F.R. Parts 501 and 587, the

"Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively, it is the administrative agency responsible for the reconsideration and delisting process.  OFAC is located at 1500 Pennsylvania Avenue, NW, Freedman's Bank Building, Washington, D.C. 20220.

29.     Defendant Bradley T. Smith is the Director of OFAC.  Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.     Mr. Astanin's Designation Is Arbitrary and Capricious

30.     The International Emergency Economic Powers Act endows the President of the United States with certain powers to deal with an unusual and extraordinary threat to national security upon declaration of a national emergency.  50 U.S.C. § 1701.  These powers include the power to impose economic sanctions on foreign entities and individuals.  *See* 50 U.S.C. §§ 1702 – 1703.  On April 15, 2021, President Biden issued E.O. 14024 which authorized the imposition of discretionary sanctions on various sectors of the Russian economy, and also granted the Secretaries of the Treasury and of State, in consultation with each other, the power to designate persons determined to meet certain criteria.  E.O. 14024 also authorizes the Secretary of the Treasury to determine additional sectors of the Russian economy to be subjected to the imposition of discretionary sanctions.  E.O. 14024 § l(a).  Pursuant to this authority, OFAC, as an office of the Department of the Treasury, has designated certain persons who operate or have operated in the financial services sector of the Russian economy.

31.     The intent behind the sanctions was made clear upon issuance.  In E.O. 14024, President Biden declared a national emergency to address the following "Specified Harmful Foreign Activities of the Government of the Russian Federation":

1.   undermining the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners;

2.   engaging in and facilitating malicious cyber-enabled activities against the United States and its allies and partners;

3.   fostering and using transnational corruption to influence foreign governments;

4.   pursuing extraterritorial activities targeting dissidents or journalists;

5.   undermining security in countries and regions important to United States national security; and

6.   violating well-established principles of international law, including respect for the territorial integrity of states.

32.     In his 2022 State of the Union address, President Biden explained that the sanctions were part of a broader U.S. policy of "inflicting pain on Russia and supporting the people of Ukraine ... cutting off Russia's largest banks from the international financial system ... [and] choking Russia's access to technology that will sap its economic strength and weaken its military for years to come."

33.     Although a Court's scope of review under the arbitrary and capricious standard is deferential, an agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the decision made. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962).  As the Department of the Treasury 2021 Sanctions Review stated, "[s]anctions should incorporate rigorous economic analysis, technical expertise, and intelligence to ensure that they are the right tool in our national security arsenal to pursue the identified objective."  DEP'T OF THE TREASURY, THE TREASURY 2021 SANCTIONS REVIEW 4 (2021).  The same report also stated that "[s]anctions should be designed to tailor their impact so that costs fall on intended targets and that potential negative impact on others is minimized."  *Id.*

34.    The sanctions on Mr. Astanin are not narrowly tailored to "ensure that they are the right tool" and that the "costs fall on intended targets."  The Defendants have not made any allegation, or presented any evidence, that Mr. Astanin engaged in any of the harmful activities specified by E.O. 14024.  Nor have they offered any explanation as to why they believe that sanctioning him would help the U.S. government to address a national security emergency or "chok[e] off Russia's access to technology ... sap its economic strength and weaken its military for years to come." Absent any rational connection between Mr. Astanin's designation and the articulated underlying policy goals of the Russia sanctions, Mr. Astanin's designation is arbitrary and capricious.

**B.    The Failure to Adjudicate and Grant Mr. Astanin's Petition Within a Reasonable Time Is Arbitrary and Capricious**

35.    According to OFAC, "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."  U.S. DEP'T OF THE TREASURY, Filing a Petition for Removal from an OFAC List, *available at* https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.    To this end, OFAC has explained that rescission of sanctions may be warranted when there has been "a positive change in behavior" or when "the basis of designation no longer exists."  *Id.*

36.    OFAC has applied this principle repeatedly to individuals, like Mr. Astanin, who (a) have been sanctioned solely because of their affiliation with a Russian financial institution and (b) have resigned from that position.  These now delisted individuals include the following:

a.  Joel Lautier, designated on March 24, 2022 based on his affiliation with Sovcombank and delisted on May 19, 2023.  Mr. Lautier was on the SDN list for 422 days;

11

b.  Anatoly Karachinsky, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on May 19, 2023. Mr. Karachinsky was on the SDN List for 395 days and his delisting petition was pending for all 395 of those days;

c.  Andrey Golikov, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on July 20, 2023. Mr. Golikov was on the SDN list for 457 days and his delisting petition was pending for 424 of those days;

d.  Elena Titova, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on July 20, 2023. Ms. Titova was on the SDN List for 457 days and her delisting petition was pending for 424 of those days;

e.  Paul Goldfinch, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on September 14, 2023. Mr. Goldfinch was on the SDN List for 513 days and his delisting petition was pending for 498 of those days;

f.  Natalya Alymova, designated on May 8, 2022, as a "current [or] recent member[] of the Executive Board of Sberbank" and delisted on September 14, 2023. Ms. Alymova was on the SDN List for 495 days.

g.  Aleksey Fisun, designated May 25, 2022 based on his affiliation with Sovcombank and delisted on January 31, 2024. Mr. Fisun was on the SDN List for 616 days and his delisting petition was pending for 492 days.

All of these individuals except for one (Mr. Fisun) were delisted in fewer than the 544 days that Mr. Astanin has now spent on the SDN List. Mr. Astanin's delisting petition has been pending for 438 days – Mr. Karachinsky's (395 days), Ms. Titova's (424 days), and Mr. Golikov's (424 days) petitions were all resolved within less time.

12

37.     Defendants have not articulated any reason as to why Mr. Astanin's case should be treated differently, and none is apparent from the facts.   He has been resigned from any management position he held in a Russian financial service sector organization for almost two years.   Mr. Astanin's prior involvement with such financial organizations was focused on modernizing and internationalizing the Russian financial services sector.   He is not politically active in any way, and he has no ties to the Russian government.

38.     The designation of Mr. Astanin has had significant negative effects (direct and indirect) on himself and his family that go well beyond the United States' interest in dealing with Russia's aggression in Ukraine.   In addition to facing reputational damage after having had a career in which he was held in high regard by financial professionals and government regulators from around the world, he and his family have experienced devastating financial impacts from the designation, which include suspending Mr. Astanin's intended relocation from Russia to Italy.

39.     Mr. Astanin presented all of these facts when he petitioned for delisting over a year ago and has elaborated on them in responses to the post-submission questionnaire sent to him by OFAC.   Indeed, Mr. Astanin has done everything that Defendants have requested, but Defendants continue to unreasonably delay adjudication of the matter.

40.     There is no other meaningful way for Mr. Astanin to challenge his designation pursuant to an administrative process.   Thus, Mr. Astanin has no other recourse than to request that this Court right the many wrongs that Defendants have caused through their arbitrary and capricious inaction in failing to adjudicate Mr. Astanin's Petition for Removal from the SDN List.

## LEGAL CLAIMS

### COUNT I

### VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT - MR. ASTANIN'S DESIGNATION
**(against all Defendants)**

41.    Mr. Astanin re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

42.    Although decisions of administrative agencies are entitled to deference, this deference has limits.  The Administrative Procedure Act directs the courts to set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2).  Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

43.    Although the scope of review under the arbitrary and capricious standard is narrow, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the decision made.  *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962).  An agency action is arbitrary and capricious if it has relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

44.    OFAC has never proffered any rational connection between the national security emergency created by Russia's invasion of Ukraine and the designation of Mr. Astanin, a modernizer who worked to bring the Russian financial system in line with the standards of Western

14

financial markets, who has never held a government position in Russia and who has never contributed to Russia's military actions in Ukraine, or to its foreign policy anywhere in the world, in any way.  Nor can any rational connection be discerned based on the undisputed facts.

45.    Because there is no rational connection between U.S. policy towards Russia and Mr. Astanin's designation, OFAC's decision to designate Mr. Astanin is arbitrary and capricious and violates section 706(2) of the APA.  Therefore, Mr. Astanin respectfully requests that this Court set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Mr. Astanin's designation under E.O. 14024 and removal of his name from OFAC's SDN List.

COUNT II

**VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT - DEFENDANTS'
FAILURE TO TIMELY ADJUDICATE AND GRANT MR. ASTANIN'S PETITION
(against all Defendants)**

46.    Mr. Astanin re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

47.    The Administrative Procedure Act requires that an agency must "conclude a matter presented to it...[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).  A court reviewing an agency's actions is required to compel actions unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).  The APA also directs the courts to set aside any agency action that is, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).  Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*."  5 U.S.C. § 551(13) (emphasis added).

15

48.     OFAC has been provided with indisputable evidence that Mr. Astanin had fully resigned from management positions in any Russian financial service sector organization by June 2022, well before being sanctioned, but have failed to rescind the sanctions designation for an extended time period – longer than one year.

49.     Administrative agencies must treat similarly situated parties similarly or provide a reasoned explanation for departing from precedent.  According to OFAC, "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."  To this end, OFAC has explained that rescission of sanctions designations may be warranted when there has been "a positive change in behavior" or when "the basis of designation no longer exists."

50.     While failing to rescind the sanctions designation on Mr. Astanin, OFAC has applied this principle to at least seven other individuals, who, like Mr. Astanin, were sanctioned solely because of their affiliation with a Russian financial institution and who have resigned from those positions.  Despite diligently pursuing his claim and consistently following up with Defendants as to the status of his Petition, Mr. Astanin has spent more time on the SDN List than almost all of these individuals and his Petition has been pending for a comparable length of time.

51.     The Defendants' failure to adjudicate Mr. Astanin's Petition in a commensurate time as other similarly situated individuals is an unreasonable delay and violates section 706(1) of the APA.  Additionally, the Defendants' failure to adjudicate and grant Mr. Astanin's Petition is arbitrary and capricious agency action that violates section 706(2) of the APA.  Therefore, Mr. Astanin respectfully requests that this Court order Defendants to issue a written, reasoned decision on Mr. Astanin's Petition and/or provide a legitimate reason why his Petition has been treated differently than those of similarly situated individuals.

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully Requests that this Court:

A.    Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B.    In the alternative, order Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has been treated differently than those of similarly situated individuals;

C.    Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

D.    Such other and further relief as the Court may deem proper.


Dated: March 11, 2024

Respectfully submitted,

*/s/  Kyle Clark*

Kyle A. Clark* (D.C. Bar No. 975304)
Matthew T. West** (D.C. Bar No. 460492)
Alexander P. Reinert** (D.C. Bar No. 1765685)

**Baker Botts L.L.P.**
700 K Street, NW
Washington, D.C. 20001
Telephone: (202) 639-7700
Facsimile: (202) 585-1072
kyle.clark@bakerbotts.com
matthew.west@bakerbotts.com
alexander.reinert@bakerbotts.com

*Counsel for Plaintiff Eddie Vladimirovich Astanin*

*\* LEAD ATTORNEY TO BE NOTICED*
*\*\* Application for admission pending*